CATHERINE S. MEULEMANS (CA Bar No. 146276)
cmeulemans@AlvaradoSmith.com
ALVARADOSMITH
A Professional Corporation
235 Pine Street, Suite 1200
San Francisco, CA 94104
Tel:  (415)  624-8665
Fax:  (415) 391-1751

W. MICHAEL HENSLEY (CA Bar No. 90437)
mhensley@AlvaradoSmith.com
JONATHAN M. WERNER (SBN: 220011)
jwerner@alvaradosmith.com
ALVARADOSMITH
A Professional Corporation
1 MacArthur Place, Suite 200
Santa Ana, California 92707
Tel:  (714) 852-6800
Fax: (714) 852-6899

RONALD L. HOLT (SBN: 30160)
rholt@dunndavison.com
KIRSTEN L. CLEVENGER (SBN: 66607)
kclevenger@dunndavison.com
DUNN & DAVISON, LLC
1100 Walnut Street, Suite 2900
Kansas City, MO 64106
Tel: (816) 292-7600
Fax: (816) 292-7601
*Pro hac vice motions pending*

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HESTIA EDUCATION GROUP, LLC, DBA BLUSH SCHOOL OF MAKEUP, a California limited liability company and MANHAL MANSOUR, an individual domiciled in California,<br><br>Plaintiffs,<br><br>v.<br><br>ARNE DUNCAN, Secretary of the United States Department of Education, in his official capacity,<br><br>Defendant. | **CASE NO.:**<br><br>ADMINISTRATIVE PROCEDURE ACT CASE<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs HESTIA EDUCATION GROUP, LLC, D/B/A BLUSH SCHOOL OF MAKEUP ("Blush" or the "School") and MANHAL MANSOUR ("Mansour"), by and through their attorneys, hereby complain against Defendant ARNE DUNCAN, Secretary of the UNITED STATES DEPARTMENT OF EDUCATION (the "Department"), and allege upon personal knowledge and belief, and upon information and belief (based upon the investigation of its counsel) as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## INTRODUCTION

1. On or around February 12, 2014, Arne Duncan, in his official capacity as Secretary of the United States Department of Education (the "Department"), issued a letter, **Exhibit 1**, which denied the application filed by Plaintiff Blush School of Makeup ("Blush"), **Exhibit 2**, for initial certification to participate as an eligible institution in the Title IV student financial aid programs.

2. Defendant has acted, and continues to act, in an arbitrary and capricious manner and otherwise not in accordance with Higher Education Act of 1965 and its Amendments, 20 U.S.C. §1071, *et seq.*, and in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702(2)(A) and (C) in the following ways: (1) by denying Plaintiff Blush's application and its subsequent risk restriction proposal, **Exhibit 3**; (2) by responding to Plaintiffs' inquiry as to what actions could be taken to gain approval, **Exhibit 4**, with a complete refusal, in a February 20, 2015 letter, **Exhibit 5**, which failed to identify any way that Blush – under ownership of Mansour – could ever gain Title IV eligibility.

3. Defendant's actions against Plaintiffs constitute *de facto* debarment contrary to the procedural protections and substantive provisions of the Higher Education Act and corresponding regulations, the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment to the United States Constitution, because Defendant denied Blush's application solely based on his determination -- made without any debarment proceeding or other due process involving adjudication by an independent fact finder -- that Plaintiff Mansour is not fit to be the controlling owner of an institution participating in the Title IV Programs.

///

## JURISDICTION AND VENUE

4. The Court's jurisdiction arises from federal statute, including 28 U.S.C. §§ 1331 (Federal Question), 1361 (Mandamus), and 2201 (Declaratory Relief). This action is brought pursuant to the Administrative Procedure Act, 5 U.S.C. 701 *et seq.*, for a declaration of rights arising under the Higher Education Act of 1965, as amended, 20 U.S.C. §1070 et seq., the regulations thereunder appearing at 34 C.F.R. Parts 85, 600 and 668, and the Fifth Amendment to the United States Constitution.

5. Venue properly lies with the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1391(e), because it is the judicial district in which Plaintiff Blush's property is located and in which Defendant has his Regional Office.

## PARTIES

6. Plaintiff Blush School of Makeup is a state-approved and nationally accredited private, post-secondary makeup-only school that has provided education and training to hundreds of students. Plaintiff Blush's campus facility is located at One Market Street, Suite 140, San Francisco, California 94105. Blush is owned by Hestia Education Group LLC, a limited liability company, organized under the laws of California.

7. Plaintiff Manhal Mansour owns 100% of Hestia Education Group LLC and is the Chief Executive Officer of Blush. He is a legal resident of the State of California and serves on the Board of Directors of Blush School of Makeup.

8. Defendant Arne Duncan (the "Secretary"), is the Secretary of the United States Department of Education and is being sued in his official capacity. The Secretary is the head of the United States Department of Education (the "Department"), a federal agency which is responsible for, among other things, the administration of the Title IV Programs.

## GENERAL FACTS AND ALLEGATIONS

### A. Blush's History

9. Plaintiff Blush School of Makeup is a private post-secondary educational institution located in San Francisco. Blush offers a Master Makeup Artist Program which prepares students for employment in the field of makeup artistry through extensive theory and practical instruction in

makeup artistry techniques. The program requires 720 clock hours and is offered as a day program, Tuesday – Saturday from 9:00 a.m. to 4:00 p.m. for 21 weeks, or as an evening program, Monday – Friday from 4:00 p.m. to 9:30 p.m. for 26 weeks. Individual class size is limited to 35 students. Tuition, kits, books, supplies and fees for the program are $12,280.

10. Blush's career services department assists graduates in securing employment as makeup artists, artistic directors, freelance designers, manufacturer's representatives, technical writers, and/or platform artists. For the year ending December 2013, Blush had 79 enrolled students and the completion rate was 80% with a placement rate of 87%.

11. Blush is the only stage and cinema makeup-only school in San Francisco and indeed the only such school outside of the greater Los Angeles area. Unlike many such schools in the Los Angeles area, Blush cannot offer federal student aid to aspiring San Francisco Bay Area students wanting to pursue a career in stage and cinema makeup because Defendant has denied Blush's application for Title IV eligibility. Since February 2014 when the Department issued its denial, Blush has had to turn away over 50 prospective students who were unable to pay their tuition and fees without access to federal student aid.

12. Blush was founded in 2010 by Plaintiff Manhal Mansour and is licensed by the California Bureau for Private Postsecondary Education ("BPPE").

13. In December 2013, Blush became accredited by the National Accrediting Commission of Cosmetology Arts & Sciences ("NACCAS"). Accreditation was granted following the NACCAS Commission's review of Blush's record, which included Blush's application and institutional self-study, a site visit and report, financial statements, annual report, complaints, government information and other materials the Commission determined to be relevant and trustworthy. Upon accreditation, Blush became eligible to apply for participation in federal student financial aid programs.

### B. Elite's History

14. Prior to founding Blush, Mansour owned and operated Elite Progressive School of Cosmetology ("Elite") from 1990 – 2008. During that time, Elite had low default rates. For example, for the fiscal year 2005, the default rate was only 3.3%; for 2006, it was 7.8%; for 2007,

the default rate was 5.4 %; for 2008, it was 6%. Elite also had excellent student outcomes. In 2008, for example, the completion rate was 86%, the placement rate was 73%, and the licensure rate of its graduates was 92% for its part-time program. Its full-time program had similar numbers with a 71% completion and placement rate and a 96% licensure rate.

15. Prior to the sale to B&H Education, Mansour was Elite's only owner. Elite, with Mansour as its sole owner, was initially certified by the Department as being eligible to participate in the Title IV programs in 2000 and then was recertified in 2002, again with Mansour as its sole owner. In all of those Elite certification processes, the Department never questioned Mansour's integrity and fiduciary capacity.

16. In the summer of 2008, as a result of errors made by Elite's financial aid staff in prior years and liabilities resulting from those errors, the Department demanded a 100% letter of credit ("LOC") before recertifying Elite for participation in Title IV funds. Elite negotiated with the Department for a more manageable LOC amount equivalent to 75% of Elite's annual Title IV disbursements, see October and November 2008 email exchanges attached as **Exhibit 6**, but ultimately Mansour opted to sell Elite to another company, B&H Education ("B&H"), which already owned and operated Title IV eligible institutions.

17. In September 2008, after Mansour had announced his intention to sell Elite to B&H and not post the 75% LOC, the Department issued an email notification indicating that Elite's recertification application under Mansour's ownership would be denied and thereafter issued a November 20, 2008 letter denying recertification. *See* **Exhibit 7**. However, prior to Mansour's announcement of his decision to sell Elite, the Department had indicated it was prepared to recertify Elite, under Mansour's sole ownership, if Elite posted a 75% LOC. *See* **Exhibit 6**.

18. Although Elite was determined to owe liabilities to the Department for previously disbursed funds, there were never any allegations of fraud or dishonesty, nor was a debarment proceeding ever initiated against Mansour or Elite. Ultimately, Elite paid off its Department liabilities in full when B&H acquired Elite from Mansour due to B&H's promise, which was part of the consideration and purchase price for Elite, to make payment of Elite's Title IV liabilities. This aspect of the agreed upon transaction is expressly stated in the October 19, 2008 Asset Purchase

Agreement between Elite, Mansour and B&H; the November 25, 2008 First Amendment to Asset Purchase Agreement; and the December 8, 2008 Second Amendment to Asset Purchase Agreement. A January 5, 2009 Settlement Agreement between Elite and the Department also supports and corroborates this agreed upon promise.

### C. Title IV Programs – Basic Elements

19. Under Title IV, the Department provides grants and federally-guaranteed student loans to qualified students enrolled in eligible post-secondary institutions and to their parents.

20. The grant programs include the federal Pell Grant program ("Pell Grants"), authorized under 20 U.S.C. §§ 1070a to 1070a-6, which is the primary grant program for low-income students, and the Federal Supplemental Opportunity Grant Programs, authorized under 20 U.S.C. §§ 1070b to 1070b-3. Under the Pell Grant program, low income students can currently obtain grants for up to $5,775 per academic year to pay for tuition and related costs of education. The grants need not be repaid.

21. To participate in the Title IV programs, post-secondary educational institutions must submit an electronic application to the Department for approval. The electronic application allows the Department to examine the qualifications of an institution and its ownership to meet Title IV eligibility requirements, including the institution's administrative capacity, its financial responsibility and its fiduciary capacity.

22. Under 20 U.S.C. §1099c and 34 C.F.R. §§ 600.20 (a) & 668.13, for initial and renewal determinations of Title IV eligibility, the Department is authorized to determine whether an institution satisfies specified eligibility requirements. For an institution owned by a for profit entity, pursuant to 20 U.S.C. §§ 1001 & 1099c and 34 C.F.R. §§ 600.5, 668.13 (a), 668.15, 668.16, 668.28, 668.82 & 668.171, the fundamental eligibility requirements are: licensure by a state agency; institutional accreditation by an accrediting agency recognized by the Department; admission only of students who hold either a high school diploma or its equivalent or are beyond the age of compulsory education; operation for at least two years while continuously offering at least one academic program eligible for the Title IV Programs; receipt of at least 10.0 % of more of tuition

revenues from sources other than the Title IV programs; administrative capability; financial responsibility; and fiduciary capacity.

23.  The Department evaluates the school's electronic application and its accompanying submissions. The Department may request additional information including but not limited to the school's satisfactory academic progress policy, admissions policies, and refund policies. A school that meets eligibility requirements participates in the Title IV programs, pursuant to a Program Participation Agreement ("PPA") with the Secretary, entered under the authority of 20 U.S.C. § 1094. When initially certifying an institution as eligible and extending it the opportunity to participate in the Title IV Programs under a PPA, the Secretary will grant "provisional" certification, providing for more control, and also may grant certification for a short term of 12 to 24 months. *See* 34 C.F.R. § 668.13. The Department also has the authority, if warranted by the institution's circumstances, to specify "conditions under which the institution may participate in those programs." *See* 34 C.F.R. 600.20 (e)(2).

### D.    Blush's Efforts to Gain Title IV Eligibility

24.  On January 3, 2014, Blush filed with the Department its electronic application for initial certification to participate as an eligible institution in the Title IV student financial aid programs. *See* **Exhibit 2**. That application required Blush to disclose its financial condition, financial aid structure, and financial aid staff, including the submission of audited financial statements. Blush's audited financial statements reflected that its financial responsibility composite score, as measured pursuant to the Department's regulation, 34 C.F.R. § 668.172, exceeded the required level of 1.5.

25.  On February 12, 2014, the Department denied Blush's application, asserting that Blush failed to meet the fiduciary standard of conduct required for a Title IV eligible institution. *See* **Exhibit 1**. The Department reached this conclusion on two grounds. First, the Department alleged that Blush's failure to list Elite on its electronic application, a school of which Plaintiff Mansour had been owner, was a material omission. Second, the Department alleged that because Elite's previous participation in the Title IV programs led to extensive Title IV liabilities, Mansour, on behalf of Blush, "cannot be trusted to act in the capacity of a fiduciary of federal funds." *Id.* at 3.

26. In response to the Department's denial, which Blush believes was based on an incorrect and incomplete understanding of the relevant facts, Blush asked the Department to reconsider in a March 21, 2014 letter. *See* **Exhibit 8**. Blush admitted it did not include Elite in its application, but explained that the failure was inadvertent, resulting from Mansour's focus on disclosing facts of which the Department likely was not aware, such as the fact that he then had somewhat recently married Cristina Grimm, who owns a Title IV eligible school, Tint School of Makeup & Cosmetology ("Tint"), which Mansour disclosed on Blush's application. Mansour understood that Elite's and Mansour's prior history with the Department was well known. This omission says nothing about Mansour's trustworthy character or fiduciary capacity. Significantly, the Department denied Blush's request to file an updated electronic application fixing this oversight.

27. Blush's response, **Exhibit 8**, also acknowledged Elite's past Title IV liabilities and clarified many of the Department's mistaken facts. Contrary to what the Department's denial letter stated, the funds for paying off Elite's Title IV liabilities came from Elite, not B&H. The Department also alleged that all of Elite's annual financial statements and compliance audits from 2003 to 2008 were late, when in fact Elite's compliance audits were timely filed from 2006 to 2008, meaning performance under Mansour was improving prior to the sale to B&H.

28. The Department's denial letter, **Exhibit 1**, also stated that Elite had been denied recertification due to its substantial liabilities. However, the Department had indicated in its correspondence to Elite during the recertification process that Elite could continue to participate in the Title IV programs under the LOC alternative. *See* **Exhibit 6**. Rather than posting a 75% LOC and electing to engage in a payment plan option, Elite chose to sell the institution to a qualified buyer as a means of satisfying all Title IV liabilities. Only after the Department was informed of the sale was a non-renewal letter issued by the Department. In pursuing a sale of Elite, Mansour acted responsibly to make arrangements that did, in fact, enable Elite to satisfy its Title IV obligations.

29. After receiving Blush's March 21, 2014 clarification of the facts, the Department nevertheless issued a May 9, 2014 letter, **Exhibit 9**, affirming its denial of initial certification.

30. On May 16, 2014 Blush proposed a risk restriction plan that would essentially eliminate any risk of loss of Title IV funds by Blush while under Mansour's control. The risk

restriction plan consisted of the following proposed conditions: (1) Blush would post a 100% Letter of Credit during the initial period of certification; (2) Blush would freeze its tuition during the initial period of certification; (3) Blush would maintain a qualified financial aid officer who would continue to receive training and hire and train additional staff if necessary (Blush provided credentials on its officer, Armand Atkins, who had taken the Department's required 4-day training course, as had Mr. Mansour); (4) Blush would use a third party servicer (RGM, an established servicer); (5) Mansour would have no role in financial aid; (6) Blush would engage an independent CPA firm with substantial Title IV aid experience to perform – and submit to the DOE – quarterly compliance audits throughout the initial period of certification; and (7) Blush would take any further steps the Department feels necessary in order to minimize the possibility of Title IV errors by Blush. *See* **Exhibit 3**. Conditions like these are within the DOE's certifying authority under 34 C.F.R. § 600.20 (e)(2), as alleged above in paragraph 23. This letter also invited representatives from the Department's San Francisco office, located literally a few blocks from Blush, to visit and tour the School and to sit down and discuss the conditions proposed by Blush, but the Department never responded to this invitation.

  31. On August 11, 2014 the Department issued a letter stating that "[n]othing raised in Blush's most recent letter changes the Department's position with respect to its initial denial letter". *See* **Exhibit 10**. The Department's August 11, 2014 letter also stated that the Department would "not consider the approval of the institution for Title IV participation at this time." *Id.* Based on this response, as well as the Department's earlier communications, it is clear the Department's decision has nothing to do with any aspect of Blush and its operations and is solely the result of Mansour being the controlling owner of Blush.

  32. Mansour's attorney followed up the August 11, 2014 letter by e-mail, **Exhibit 4**, requesting the Department to identify actions that Mansour could take to gain the Department's willingness to allow him to function as the controlling owner of a Title IV eligible institution and asking at what time Blush could expect to gain Title IV participation. For over six months, the Department gave no response to Blush's inquiry about what actions Blush and Mansour could take to improve the Department's judgment of Blush's fiduciary capacity under Mansour's ownership,

until the Department sent its February 20, 2015 letter, **Exhibit 5**, stating there is nothing Mansour can ever do to gain approval to be the controlling owner of a Title IV eligible school.

33.     In October 2014, counsel for Blush proposed that Mansour would sell all of his ownership interest in Blush to Ms. Grimm (owner of Tint, with which there are no Title IV concerns) or Mr. Atkins (a Blush manager) and afterwards Mansour's continuing involvement with Blush would only be in academic and creative areas, if the Department would grant initial Title IV certification to Blush. *See* **Exhibit 11** (email correspondence). This proposal was repeated by Blush's counsel in subsequent email messages over a period of several months, since the Department did not respond. In its February 20, 2015 letter, **Exhibit 5**, the Department stated that a transfer of Blush ownership by Mansour to Grimm would not alter the Department's judgment that Blush lacks fiduciary capacity, but the Department still has not responded to Blush's alternative proposal for a transfer of Blush ownership to Atkins.

34.     On November 13, 2014, Blush's counsel, by email, (*see* **Exhibit 12**), forwarded to representatives of the Department copies of letters and email messages from several government agencies and community organizations, which all have extended approvals of and/or commendations about Blush: U.S. Department Of Homeland Security; Student Exchange Visitor Program, **Exhibit 13**; U.S. Department of Veterans Affairs, **Exhibit 14**; NACCAS (accrediting agency), **Exhibit 15**; California Bureau of Private Postsecondary Education (State approving agency), **Exhibit 16**; San Francisco Fire Department, **Exhibit 17**; San Francisco Fashion & Merchants Alliance, **Exhibit 18**; and Alisa Ann Ruch Burn Foundation, **Exhibit 19**. As counsel's November 13 email message pointed out, none of these agencies and organizations expressed any concern about the integrity and character of Blush or its owner.

35.     On January 22, 2015, Blush's counsel sent the Department an email message, **Exhibit 20**, forwarding a January 16, 2015 email letter from a U.S. Department Of Veteran Affairs Educational Specialist praising Blush after a recent compliance site visit, **Exhibit 21**, and a list of 43 prospective students who between March 2014 and the end of 2014 had expressed the need for federal student aid in order to attend Blush and a list of 8 prospective students who in January 2015 had shared the same need (to safeguard the privacy interests of these prospective students, these lists

10

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
4232975.1 -- NWMH1257.1

have not been filed as exhibits to the Complaint). The January 22, 2015 email message repeated an earlier Blush request for a meeting with representatives of the Department for the purpose of working out a set of conditions under which Blush would be granted initial certification of Title IV eligibility. Blush's counsel sent a reminder email message on February 9, 2015. *See* **Exhibit 22**.

36. On February 17, 2015, Mr. Mansour sent an email message to Martina Fernandez Rosario, head of the Department's San Francisco office, **Exhibit 23**, to forward a copy of the audit of Blush's fiscal year ended December 31, 2014. *See* **Exhibit 24**. The audit reports that Blush, for fiscal year 2014, had a 3.0 financial responsibility score, the highest possible score on this Department required metric, demonstrating that Blush has more than adequate financial resources to participate in the federal student aid programs.

37. On Saturday February 28, 2015, Blush received the February 20, 2015 letter, **Exhibit 5**, from the Department, which repeats the same unfounded allegations from the Department's February 12, 2014 letter, **Exhibit 1**, about Blush's omission of Elite from the Blush application and Elite's Title IV history. As in the original denial letter, the February 20, 2015 letter sets forth a distorted and incomplete statement of Elite's Title IV history. The letter also falsely accuses Plaintiffs and their counsel of providing misleading information in their communications with the Department in 2014-2015 and of improperly obtaining support letters. And, in an apparent attempt to bolster the Department's specious judgment that Mansour is dishonest, the letter claims that Mansour's alleged lack of honesty and fiduciary capacity is established by an incident allegedly occurring over 20 years ago when Mansour was a licensed civil engineer in California, yet the Department did not cite this incident in its February 12, 2014 denial letter, its evaluation of Elite in 2008 or any earlier Elite recertification proceedings.

38. Plaintiffs responded to the February 20, 2015 letter with a March 3, 2015 email message, **Exhibit 25**, denying the Department's allegations and informing the Department that its unequivocal blacklisting of Mansour left Plaintiffs with no option other than the initiation of this suit.

39. Defendant and his FSA staff were extended numerous opportunities to work with Blush to create a set of participation conditions that would address all of the Department's concerns

and allow Blush students to receive federal student aid. Defendant rejected all such opportunities and instead has blacklisted Mansour for life without any due process.

40. The Department's continuing decision to deny Title IV eligibility to Blush is based solely on the fact that Mansour is the controlling owner of Blush and the Department's view that Mansour lacks trustworthiness and thus lacks fiduciary capacity. The Department has not alleged that Blush lacks any of the other fundamental requirements for Title IV eligibility outlined in paragraph 20 above.

41. By taking the actions set forth above concerning Blush and adopting the position it has taken toward Mansour, the Department has effectively blacklisted Mansour and deprived him of any opportunity to ever hold controlling ownership of any postsecondary institution participating in the vital Title IV Programs, without affording him any opportunity to defend himself before an independent fact finder on the issues upon which the Department has effectively ruled against him. These actions represent an abuse by the Secretary of his statutory authority concerning the approval of postsecondary institutions for federal student aid, arbitrary and capricious action, unlawful *de facto* debarment and a violation of Plaintiffs' rights to due process of law under the Fifth Amendment to the United States Constitution.

42. Blush currently has 45 students enrolled who are able to fund their tuition from sources of funds available to them, but, as alleged above, in the twelve (12) months since the February 2014 denial, Blush has had to turn away over 50 prospective students because they could not pay their tuition and fees without access to federal student aid. Blush has the capacity to have as many as 85 students enrolled at one time.

43. Individuals living in Northern California who want to pursue a career as a makeup artist and attend a school specializing in makeup, but who lack funds needed for tuition, must either relocate to the Los Angeles area where there are such schools with federal aid, defer their dream until they can save enough money for tuition or surrender their dream. And this situation is entirely the result of the unlawful actions of the Defendant. Every day that goes by with the Defendant's unlawful decision remaining in place, more and more individuals with dreams of a career in makeup artistry will be forced to relocate, defer or surrender their dreams.

## FIRST CAUSE OF ACTION

### Arbitrary and Capricious Action

44.   Plaintiffs Blush and Mansour re-allege and incorporate herein by reference the allegations previously made in paragraphs 1 through 43 above.

45.   The Department's denial of Blush's initial certification to participate as an eligible institution in the Title IV student financial aid programs constitutes an abuse of discretion and is arbitrary and capricious. A reviewing court may "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

46.   The Department failed to clearly identify all materials and information it considered in rejecting Blush's proposal for initial participation in the Title IV student financial aid programs under a set of proposed conditions.

47.   The Department has not identified standards or criteria against which it weighed the proposed conditions or any factual information it considered in weighing and rejecting the proposed conditions.

48.   Beyond its allegations in **Exhibit 5** that Mansour and Elite misled Elite's third party servicer, an allegation which is completely false and wholly unfounded, the Department has not articulated why the conditions Blush proposed were inadequate, nor has it identified any other conditions under which it would grant Blush, under Mansour's ownership, initial Title IV eligibility.

49.   Furthermore, the Department has not indicated what other steps Plaintiffs Blush and Mansour could take to ever gain the Department's approval.

50.   Mansour's error in omitting identification of Elite from the Blush application and Mansour's earlier history in owning and operating Elite, when weighed in light of all circumstances relevant to each of those matters, do not support the negative conclusion drawn by the Department about Mansour. Nor does either of those matters support the Department's denial of Blush's request for initial certification of Title IV eligibility, especially given the extensive conditions proposed by Blush which substantially reduce, if not completely eliminate, any risk of loss to the Department from Blush's participation in the federal student aid programs.

51. On information and belief, one or more past or current employees of the Department may have a personal dislike for, and bias against, Mr. Mansour. Any such dislike or bias is wholly inappropriate and does not support the Department's rejection of Blush's application to participate in the federal student aid programs.

52. The conduct of the Department, as alleged above, represents a clear and flagrant abuse of its discretion, is arbitrary and capricious in nature and is contrary to the intent and purpose of applicable HEA statutory and regulatory provisions regarding the approval of postsecondary institutions to participate in the federal student aid programs. The Department's actions are also contrary to the Congressional purpose to extend federal aid to students, like the prospective Blush students, who are unable to pay all institutional charges to attend a postsecondary institution of their choice.

## SECOND CAUSE OF ACTION

### De Facto Debarment

53. Plaintiffs Blush and Mansour re-allege and incorporate herein by reference the allegations previously made in paragraphs 1 through 52 above.

54. Defendant's actions, in denying Blush's application for Title IV participation on the basis that Plaintiff Mansour allegedly is not trustworthy to act as a fiduciary of a Title IV eligible institution and in failing to indicate when and how Plaintiff Mansour could ever alter the Department's judgment about Mansour's character, have *de facto* debarred Mansour from ever participating in controlling ownership of postsecondary educational institutions participating in federal student aid programs administered by the Department under Title IV of the Higher Education Act, specifically including Blush, all without Mansour being afforded any due process of law and any opportunity to be heard on the merits before an independent fact finder with the opportunity to clear his name.

55. The Department's contention that Mansour lacks fiduciary capacity is said to be based on: (i) Mansour's history with Elite, which history as stated by Department is incorrect and incomplete; (ii) Blush's omission of Elite's name from Blush's Title IV application; and (iii) an alleged 20-year old event in Mansour's prior career as a civil engineer, something not cited in the

Department's February 12, 2014 denial letter, **Exhibit 1**, nor cited during the Department's evaluation of Elite in 2008 or in prior Elite recertification proceedings. None of the foregoing matters support the Department's judgment that Mansour cannot ever be trusted to act in the capacity of a fiduciary of federal funds for Blush or any other postsecondary institution.

56. Plaintiffs offered to put extensive safeguards into place, and further invited the Department to propose any other conditions it might deem to be necessary, in order to gain the Department's approval of Blush, while owned by Mansour. The Department denied that request and has not stated what steps Mansour could take to ever gain the Department's approval.

57. The Department's exclusion of Blush, based on Mansour's ownership of Blush, is in violation of the due process clause of the Fifth Amendment of the United States Constitution because the exclusion of Mansour from ownership of a Title IV eligible institution amounts to a de facto debarment in violation of the regulations and procedures governing debarment from federal programs without affording an opportunity to contest the debarment pursuant to applicable federal debarment regulations, i.e., Executive Order 12549, referenced in 34 C.F.R. § 668.82 (f).

58. The Department has never actually sought to debar Mr. Mansour, a proceeding which would entitle him to defend himself before a neutral fact finder. Instead, the Department has chosen to blacklist Mr. Mansour without due process.

59. Therefore, in order to resolve this controversy, Plaintiffs request that, pursuant to 28 USC § 2201, this Court declare the respective rights and duties of the parties in this matter, and in particular that the Court declare that Manhal Mansour has been *de facto* debarred from participation in Title IV Programs without the necessary due process hearing pursuant to the Fifth Amendment of the United States Constitution and the applicable debarment regulations.

60. A valid case and controversy exists sufficient for this court to declare the respective rights and duties of the parties pursuant to the above facts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Hestia Education Group LLC d/b/a Blush School of Makeup and Manhal Mansour, hereby pray for declaratory and equitable/injunctive relief against Defendant, Arne Duncan, the Secretary of the United States Department of Education, as follows:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
4232975.1 -- NWMH1257.1

   a. After a period of discovery and trial, to exercise review of the Secretary's actions as alleged hereinabove and to declare the same to be unlawful, arbitrary and capricious, and otherwise improper;

   b. To declare that the Department's actions are illegal and amount to a *de facto* debarment and to declare that Mansour cannot be debarred from ownership of an institution participating in the federally funded Title IV Programs absent notice and an opportunity for a hearing as provided for by both statute and the Department's own regulations;

   c. To enjoin the Secretary from any further violation of the due process rights of Mansour and Blush and to order him to either grant Blush's Title IV participation or to conduct a debarment proceeding in accordance with applicable debarment regulations prior to taking any further debarment action against Mansour and Blush;

   d. To award Plaintiffs all of their expenses of this litigation, including costs and reasonable attorneys' fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

   e. To award Plaintiffs such other and further legal and equitable relief as the Court deems just and proper.

DATED: March 30, 2015

ALVARADOSMITH
A Professional Corporation

By: _____
CATHERINE S. MEULEMANS
W. MICHAEL HENSLEY
Attorneys for Plaintiffs
HESTIA EDUCATION GROUP, LLC, DBA BLUSH SCHOOL OF MAKEUP and MANHAL MANSOUR

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
4232975.1 -- NWMH1257.1

# FRCP 7.1 CORPORATE DISCLOSURE STATEMENT

This Corporate Disclosure Statement is filed on behalf of Hestia Education Group, LLC, dba Blush School of Makeup, in compliance with Federal Rule of Civil Procedure 7.1.

Hestia Education Group, LLC, dba Blush School of Makeup, is a California limited liability corporation and has no parent corporation. No publicly held corporation owns 10% or more of its membership interests.

DATED: March 30, 2015

ALVARADOSMITH
A Professional Corporation

By: _____
CATHERINE S. MEULEMANS
W. MICHAEL HENSLEY
Attorneys for Plaintiffs
HESTIA EDUCATION GROUP, LLC, DBA BLUSH SCHOOL OF MAKEUP and MANHAL MANSOUR