UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HESTIA EDUCATION GROUP, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JOHN KING, <br><br> Defendant.[1] | Case No. 15-cv-01463-DMR <br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DISCOVERY; DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND RELATED SUPPLEMENTAL BRIEFING** <br><br> Re: Dkt. No. 28, 42 |

Plaintiffs Hestia Education Group, LLC dba Blush School of Makeup ("Blush") and Manhal Mansour filed a motion for discovery in this appeal under the Administrative Procedure Act ("APA"), 5. U.S.C. § 701 *et seq*. Docket No. 28. The court held a hearing on this matter on November 12, 2015. Upon the court's request, Defendant submitted additional citations to the administrative record. Docket No. 44. For the reasons set forth below, Plaintiffs' motion for discovery is **granted in part and denied in part**.

## I.   BACKGROUND

Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. §§1070 et seq., governs federal student financial aid programs. In order to participate in such a program, a school must execute a contract with the Department of Education (the "Department") known as a program participation agreement. 20 U.S.C. § 1094(a); 34 C.F.R. § 668.14. The Department executes contracts only after reviewing an institution's administrative capability and financial responsibility, determining that an institution satisfies statutory eligibility requirements, and

---

[1] John King, Acting Secretary of the United States Department of Education, has been substituted for Defendant Arne Duncan, Secretary for the United States Department of Education, pursuant to Fed. R. Civ. P. 25(d).

deciding that the institution is capable of acting as the Department's fiduciary. *See* 34 C.F.R. §§ 6000.20(a); 668.82(a), (b). An institution seeking certification must demonstrate that it qualifies as an eligible institution, and meets the standards for participation and financial responsibility, as set forth in the regulations. 34 C.F.R. § 668.13(a).

On January 3, 2014, Blush filed an application with the Department seeking initial certification of eligibility to participate in the Title IV federal student loan and grant program. The Department denied Blush's application in a letter dated February 14, 2014, and affirmed the denial in subsequent letters issued on May 9, 2014, August 11, 2014 and February 15, 2015. The Department denied Blush's application due to its failure to disclose that Mansour had been the owner and president of Elite Progressive School of Cosmetology ("Elite"), an institution which the Department had refused to recertify for participation in Title IV programs due to multiple serious administrative and financial deficiencies.

Plaintiffs filed this lawsuit in March 2015 seeking review of the Department's denial under the APA. Plaintiffs allege that the denial of Blush's application was arbitrary and capricious, and also resulted in a de facto debarment.

Plaintiffs now move for discovery.

## II.    LEGAL STANDARD

In cases challenging a final federal agency decision under the APA, judicial review of agency action is usually limited to review of the administrative record. *Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir.1986). The Supreme Court has emphasized that when reviewing administrative decisions, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). The task of the reviewing court is to review the agency decision based on the record the agency presents to the reviewing court. *Id.* at 743-44.

The APA directs the reviewing court to review "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Under Ninth Circuit precedent, "[t]he 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of*

*Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation and internal quotation marks omitted) (emphasis removed). "In the absence of clear evidence to the contrary, courts presume that [public officers] have properly discharged their official duties." *Citizens to Preserve Overton Park Inc.*, 401 U.S. 402, 415 (1971). Accordingly, an agency's designation of the administrative record is entitled to a presumption of regularity, and its certification is deemed sufficient to show that the record is complete. *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citations omitted).

Because a court's review of an agency decision under the APA is limited to the administrative record, discovery generally is not permitted in such cases. *McCrary*, 495 F. Supp. 2d at 1041. However, certain rare circumstances may justify permitting discovery or expanding judicial review beyond the administrative record. *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) *amended*, 867 F.2d 1244 (9th Cir. 1989). The Ninth Circuit has articulated four such exceptions. Courts may permit discovery or review extra-record material only when "(1) it is necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) the agency has relied on documents not in the record, (3) supplementing the record is necessary to explain technical terms or complex subject matter, or (4) plaintiffs make a showing of bad faith." *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1116 (9th Cir. 2009). "[T]hese exceptions are narrowly construed and applied." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

### III.   DISCUSSION

Plaintiffs contend that they are entitled to discovery because the designation of the administrative record is incomplete and the decision-making process was materially flawed. As discussed further below, Plaintiff Mansour also argues that discovery should be allowed on his de facto debarment claim.

The Department is entitled to a presumption that the administrative record is regular and complete. The party seeking to supplement the record "bears the burden of overcoming this presumption by 'clear evidence.'" *Natural Res. Def. Council v. Pritzker*, 62 F. Supp. 3d 969, 1023 (N.D. Cal. 2014). Plaintiffs must therefore set forth clear evidence that they are entitled to

3

discovery based on at least one of the four recognized exceptions set forth above. Plaintiffs did not frame their arguments to coincide with the legal standards, thus leaving to the court the task of construing Plaintiff's assertions to determine whether they fit within any of the exceptions to the "no discovery" rule.

### A. Did Plaintiffs Clearly Establish an Exception to the "No Discovery" Rule?

Plaintiffs make a number of arguments in support of their bid for discovery. They first argue that the Administrative Record ("AR") is incomplete because the Department omitted certain documents.[2] The court construes this as an attempt to fall within the first exception, which permits discovery where it is "necessary to determine whether the agency has considered all relevant factors and explained its decision."

Plaintiffs contend that the record should be augmented to include additional documentation of the sale of Elite. The Department found that while under Mansour's ownership, Elite owed the Department over $1.6 million dollars due to its failure to comply with applicable Title IV regulations. AR 2-3, 217. Elite did not pay this liability to the Department under Mansour's ownership. Instead, Mansour sold Elite to B&H, which took over Elite's liabilities to the Department as part of the sale. The existing record demonstrates that the Department considered the sale of Elite to B&H, as well as the fact that B&H assumed responsibility for Elite's $1.6 million liability to the Department. *See, e.g.,* AR 217. Plaintiffs therefore cannot establish that the record is deficient; they merely assert that additional sales documents would place Elite's prior behavior in a more favorable light by showing that Elite ultimately satisfied the debt to the Department.[3] Plaintiffs have not clearly established that the record is inadequate to explain the Department's decision.

Plaintiffs next argue that certain pages of Blush's application are missing from the AR,

---

[2] At the hearing, Defendant agreed to augment the AR with all of the documents that Plaintiffs identified and attached as exhibits to their motion. The court will analyze this issue, even though Defendant's agreement effectively mooted the argument with respect to the specific documents Plaintiffs attached to their motion.

[3] It can be argued that the sales documents actually support the Department's denial of Blush's application, for they show that B&H, not Mansour or Elite under Mansour's ownership, had the financial resources to pay Elite's $1.6 million liability to the Department.

4

including a recent National Accrediting Commission of Career Arts & Sciences ("NACCAS") accreditation letter, a recent California Bureau of Private Postsecondary Education ("BPPE") licensing letter issued to Blush, and copies of financial aid policies submitted by Blush with its application.[4] None of these documents are connected to the Department's decision to deny Blush's application. As such, Plaintiffs have failed to clearly establish that the absence of these documents from the AR somehow justifies discovery.

Plaintiffs also contend that Defendant acted in bad faith, which would satisfy the fourth exception to the rule against discovery in APA cases. In order to invoke the bad faith exception, Plaintiffs must make "a strong showing of bad faith or improper behavior" by the agency. *See Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988).

Plaintiffs first assert that the Department did not act in good faith because it only included documents that supported its decision. This is not accurate. The AR contains many documents that were submitted by Plaintiffs or were otherwise supportive of Plaintiffs' application.

Next, Plaintiffs argue that the Department exhibited bad faith because it made a quick decision to deny Blush's application, then came up with additional reasons for the denial. Blush submitted its application on January 3, 2014. Plaintiffs point to emails[5] sent on January 28 and 29, 2014 Renee Gullotto to Marla Green which state that "[Ms. Fernandez-Rosario][6] is wanting someone to do a cursory review of the application in order to determine if there are any additional reasons we can deny the application," and "[Ms. Fernandez-Rosario] wants a quick turnaround on an initial/cursory look at the Financials for this school. I'm working on the Denial letter and if there are any issues, we want to use them in the letter." On January 30, 2014, Gullotto sent an email to Green stating that "It doesn't appear there's anything to use as an additional reason for purposes of denial. Would you recommend the approval of their financials otherwise?" Finally,

---

[4] The AR includes an October 29, 2014 BPPE approval letter [AR 208] and an October 15, 2013 NACCAS approval letter [AR 205].

[5] Plaintiffs obtained these emails through a Freedom of Information Act request.

[6] Ms. Fernandez-Rosario is the Division Director for the Department who has authority to "review and approve or deny applications for initial or continuing eligibility of schools to participate in the Title IV programs." Fernandez-Rosario Declaration [Docket No. 32-3] ¶ 2.

Plaintiffs cite to a March 24, 2014 email sent from Jennifer Woodward that states, "I would need to talk this through with the case team to decide whether to let this guy back into the programs. I tend to think that we should never do so." *See* Pls.' Motion at 13-14.

These emails do not constitute clear evidence of bad faith. The fact that the Department made a decision on Plaintiffs' application within a month of its submission is not, by itself, indicative of improper motive. Nothing in the email exchange is inconsistent with the Department's proffered reason for denial. Having made the decision to deny Plaintiffs' application, the decision makers did not act inappropriately in conducting a review to determine if there were additional deficiencies to set forth in the denial letter. The subsequent emails indicate that members of the review team were, in fact, open to considering the possibility of approving the application, even if they had concerns about Mansour's past record. In sum, Plaintiffs have not presented clear evidence that Defendant acted in bad faith.

Finally, Plaintiffs generally assert that they are entitled to discovery because "it is not possible to identify what information [the Department] actually considered" and "there is reason to believe that the Department failed to consider available relevant information." Pls.' Motion at 6. The court construes this as an argument under the first exception, discussed above, as well as the second exception, which permits discovery if Plaintiffs clearly establish that the agency has relied on documents that are not in the record.

As a general matter, Plaintiff's assertion is contradicted by the AR itself, which demonstrates that the Department sent multiple letters to Plaintiffs explaining the reasons for denial, each of which was supported by citations to record evidence. The Department's initial denial was based on Mansour's failure to disclose his prior ownership of Elite. AR 2-3. That letter discusses Elite's troubled history with the Department, and notes that Mansour's failure to disclose his prior ownership constituted a material omission "inconsistent with the fiduciary standard of conduct." AR 3. The Department attached over one hundred pages of supporting documents to its decision letter. AR 5-115. Plaintiffs were given an opportunity to respond and submit evidence disputing the finding. AR 4. The Department's subsequent letters responded to arguments raised by Plaintiffs, and provided citations to the record evidence on which the

Department relied.  AR 176-191, 197, 214-222.

However, Defendant's own opposition papers put a wrinkle in an otherwise straightforward analysis.  Defendant submitted the declarations of Donna Wittman and Martina Fernandez-Rosario in support of its opposition to Plaintiffs' motion for discovery, in order to "provide further background on the decision-making process."  Deft.'s Opposition [Docket No. 32] at 4.  The Wittman Declaration [Docket No. 32-2] discusses the details of a 2007 compliance review conducted on Elite.  The Fernandez-Rosario Declaration [Docket No. 32-3] discusses both the 2007 compliance review of Elite and the review of Blush's 2014 application for initial certification.

Defendant relies on *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038 (N.D. Cal. 2007) for the proposition that courts can properly consider declarations to counter efforts to expand administrative records through supplemental documents and discovery.  In *McCrary*, the plaintiff claimed that the National Marine Fisheries Service ("NMFS") had conducted then concealed a peer review of his petition for reconsideration of the agency's listing of Coho salmon under the Endangered Species Act.  495 F. Supp. 2d at 1042.  In opposing plaintiff's attempts to augment the AR, NMFS provided a sworn declaration that no such peer review had been conducted nor was it required by NMFS policy.  *Id.*  The district court relied on the declaration for the limited purpose of determining that the peer review had not occurred.  The court then denied plaintiff's request to augment the administrative record.  *Id.*

By contrast, in this case, Defendant proffered the Wittman and Fernandez-Rosario declarations for the much broader purpose of "provid[ing] further background on the decision-making process."  This prompted Plaintiffs to file declarations from Manhal Mansour, Barry Glasser, and Cristina Grimm[7] challenging statements made in the Wittman and Fernandez-Rosario declarations.  Docket Nos. 33-1, 2, 3.  Plaintiffs argue that Defendant's declarations amount to an impermissible attempt to supplement the AR.  According to Plaintiffs, the Department's effort to further explain its decision-making process proves that the Department relied on information not currently contained in the record.

---

[7] Grimm is Mansour's wife.

7

The Fernandez-Rosario declaration refers to the "Elite scheme," a term not found in the AR. Fernandez-Rosario Decl. ¶ 9. Plaintiffs argue that the use of the specific phrase "Elite scheme" shows that the Department relied on information that is not included in the AR in making its decision. This technical argument is unavailing, for the AR is replete with information about the underlying problems with Elite's management of Title IV funds, even if no one referred to it as the "Elite scheme." *See* Elite Final Program Review Determination, AR 27-108. The 2008 Elite Final Program Review found numerous severe Title IV violations: Elite (1) disbursed more than $2.2 million in Title IV funds to Elite students enrolled at an unaccredited, ineligible campus; (2) failed to properly and timely pay tuition refunds and credit balances; (3) failed to properly verify required financial aid data; (4) failed to maintain required documentation; and (5) used Title IV funds for non-program purposes without student authorization. AR 31-35, 40-44. In total, Elite owed the Department more than $1.6 million dollars in liabilities for failure to comply with Title IV and HEA statutes and regulations. AR 215-18. Fernandez-Rosario's short-hand reference to this history of mismanagement as the "Elite scheme" does not demonstrate that the Department relied on extra-record evidence.

Fernandez-Rosario also states that while she was initially inclined to overlook the omission of Mansour's prior ownership of Elite, her review of the history of Elite, Mansour's and Grimm's complicity in the Elite scheme overwhelmed that initial inclination. Fernandez-Rosario Decl. ¶ 9. Plaintiffs argue that Fernandez-Rosario's statement, filed in opposition to Plaintiff's motion, is the first indication that the Department considered Grimm and her involvement in the "Elite scheme" in reaching its decision to deny Blush's application. The court requested that the Department provide citations to the AR to demonstrate the Department considered Grimm's "complicity in the Elite scheme" in reaching its decision to deny Blush's application. Docket Nos. 43. None of the Department's proffered record citations mention that Grimm was involved in the mismanagement of funds at Elite. Docket No. 44. The Department's citations focus on the mismanagement of funds at Elite without identifying Grimm's involvement [AR 40-42, 217], note the Department's concern regarding Grimm's position to exercise control over the management of Blush [AR 197], and state that the Department would review Blush's application under another person's ownership

upon submission of such an application [AR 220].  While the Wittman declaration spells out Grimm's alleged involvement in management of funds at Elite, none of this information appears in the AR.

The court finds that Wittman's recounting of her interactions with Grimm during the Elite review, and Fernandez-Rosario's consideration of Grimm's involvement in Elite clearly demonstrate that the Department relied on extra-record information in reaching its decision to deny Blush's application.  Plaintiffs have thus satisfied the second exception to the "no discovery" rule on these narrow grounds.

The Department is ordered to supplement the AR with the materials it relied on in denying Blush's application regarding Grimm's involvement in Elite's failure to comply with applicable Title IV, HEA statutes and regulations.  Plaintiffs may propound one interrogatory and one document request on this issue.  Plaintiffs may also conduct one-hour depositions of Fernandez-Rosario and Wittman, which shall be restricted to this topic.  The court otherwise denies Plaintiffs' motion for discovery under the APA.

### B.     De Facto Debarment

Plaintiff Mansour argues that he is entitled to discovery regarding his claim for de facto debarment.[8]

#### 1.     Legal Standard for Debarment

Debarment is the exclusion of persons who are not presently responsible from doing business with the government to ensure the integrity of federal programs.  2 C.F.R. § 180.125; 2 C.F.R. § 180.925; 2 C.F.R. § 3485.12.[9]  Debarment is also governed by Executive Order 12549, which mandates that debarment of a participant in a program by one agency shall have government-wide effect.  Exec. Order No. 12549; 51 Fed. Reg. 6370 (3 CFR 1986 Comp., p. 189).

In order to participate as a fiduciary in the administration of the Title IV programs, an

---

[8] While the Plaintiffs' pleadings are drafted as bringing a de facto debarment claim on behalf of both Mansour and Blush, at the hearing Plaintiffs clarified that the de facto debarment claim is only brought on behalf of Mansour.

[9] 2 C.F.R. § 3485.12 is the Department of Education's regulation adopting the Office of Management and Budget's guidance in subparts A through I of 2 C.F.R. § 180, which includes the definition of debarment.

institution must at all times act with the competency and integrity necessary to qualify as a fiduciary. 34 C.F.R. § 668.82(a). When a person has been debarred by the Department, they are restricted from participating in covered transactions not only with the Department of Education, but with any other federal agency. 2 C.F.R. § 180.130. Similarly, the debarment of a Title IV, HEA participant by another agency under Executive Order 12549 makes the party ineligible to participate in Title IV, HEA transactions for the duration of the debarment. 2 C.F.R. § 3485.612(a); 34 C.F.R. § 668.82(f)(1).

The Department has specific debarment procedures, which include notice, hearing, and an opportunity for appeal. 2 C.F.R. § 3485.611(b); 34 C.F.R. § 668.1, *et seq.*; 34 C.F.R. § 682.1, *et seq.* A plaintiff can plead a claim for de facto debarment if plaintiff has effectively been debarred from doing business with the government without the benefit of procedural protections. *Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 8 (1st Cir. 2005). A plaintiff trying to establish a de facto debarment claim faces a high standard. *Mitchell Eng'g v. City & Cty. of San Francisco*, No. C 08-04022 SI, 2009 WL 440486, at *3 (N.D. Cal. Feb. 23, 2009). Limited discovery may be appropriate to allow a plaintiff to prove a de facto debarment claim. *See Nat'l Career Coll., Inc. v. Spellings*, No. CV 07-00075 HG-LEK, 2007 WL 9362682, at *4 (D. Haw. Aug. 3, 2007) (permitting limited discovery in de facto debarment case).

### 2. Analysis

Mansour alleges that the denial of Blush's Title IV application amounts to a de facto debarment, because the terms of the Department's denial effectively bar him from transacting with the Department without having afforded him the protections of the debarment process. Mansour hinges his de facto debarment claim on language in the February 20, 2015 final denial letter which states "[t]here exists no 'set of controls or conditions' that can address the Department's concerns here, where you, the owner, and therefore the institution over which you exercise substantial control, has not demonstrated that it can be trusted to act as the Department's fiduciary." AR 214. Mansour argues that this language demonstrates that the Department effectively has debarred him from participating in Title IV programs as the owner of an eligible institution. He contends that he should be allowed discovery to determine whether the Department's actions amounted to a de

facto debarment against him.

In response, the Department first points to language from the same letter indicating that the Department would reconsider its denial of Blush's application under some other person's ownership. AR 220. While relevant to a debarment claim if brought by Blush, this argument does not counteract Mansour's claim.

More broadly, the Department argues that Mansour's theory of de facto debarment has been rejected by the Ninth Circuit in *National Career College, Inc. v. Spellings,* 371 Fed. Appx. 794, 796 (9th Cir. Mar. 22, 2010).[10] In *National Career College*, as in this case, plaintiffs challenged the Department's denial of an application for eligibility to participate in federally funded student aid programs under the HEA. Allen Mirzaei purchased 49% of National Career College, Inc., doing business as Hawaii Business College ("HBC"). At that time, the Department approved HBC's continued participation in Title IV federal financial aid programs. Mirzaei's subsequent purchase of the remaining 51% of HBC triggered a change in control, requiring HBC's reapplication under Title IV. The Department denied HBC's request for reapplication, citing Mirzaei's previous breach of fiduciary duty when he owned another college. HBC contended that the rejection of its application amounted to a de facto debarment without due process.

The Ninth Circuit held that the denial of HBC's application for recertification did not constitute a de facto debarment. *Id.* The court explained that when a party is debarred, that party cannot seek to enter into any contract with any federal agency. *Id.* The Ninth Circuit concluded that because HBC had not been barred from entering into other contracts with the Department or with other federal agencies, the single incident of the denial of HBC's application to participate in Title IV financial aid funding was insufficient to prove a de facto debarment. *Id.* (citing *Redondo-Borges v. U.S. Dep't. of Housing and Urban Devel.*, 421 F.3d 1, 8-9 (1st Cir. 2005)).

Here, Mansour cannot sustain a de facto debarment claim because Blush has been approved to participate in other federal programs with Mansour as its president. In July 2013, Blush received approval from the Department of Homeland Security to provide education to non-

---

[10] Although unpublished and thus non-precedential, (*see* Ninth Circuit Rule 36-3(a)), this court properly may consider the Ninth Circuit's reasoning.

11

immigrant foreign students and report on those students' status to the agency. AR 211-12, 213. The Department of Veterans Affairs also approved Blush to train eligible veterans and dependents under the GI Bill and Dependents Education Assistance Program.[11] As recently as April 8, 2014, (which is after the Department's February 12, 2014 initial denial of Blush's application for Title IV certification), Blush passed its compliance survey conducted by the California State Approving Agency for Veterans Education ("CSAAVE"). AR 209-10. CSAAVE works with the U.S. Department of Veterans Affairs to evaluate and monitor education and training programs.[12] Mansour cannot claim that he has been debarred, since the record clearly shows that he has not been barred from transactions with other federal agencies.

At the hearing, Mansour attempted to distinguish *National Career College* by relying on *Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252, 1258 (2d Cir. 1975) for the proposition that a debarment claim could be based on denial of access to a particular subset of special contracts or preferred status. Mansour argues that *National Career College* failed to properly recognize the teaching from *Myers* that "a 'sanction' taken against [a party] for claimed irregularities... is far different than that of simply denying an application for a contract." *Id.* at 1258-59. *Myers* is readily distinguishable. Reviewing an order granting a motion to dismiss, the Second Circuit construed the complaint in the light most favorable to plaintiffs, and found that plaintiffs' allegations constituted a claim that they were denied renewal of a postal service transportation contract as a result of debarment action without the procedural safeguards of notice and a hearing. *Id.* at 1260. The court noted that the Postal Service's General Counsel had characterized the agency's denial as a debarment. *Id.* at 1258, 1260. The court remanded to the trial court to determine whether the Postal Service's action constituted a debarment or something less. *Id.*

---

[11] The approval letter from the Department of Veterans Affairs in the AR is not dated. AR 211-12.

[12] CSAAVE operates under contract with the U.S. Department of Veterans Affairs. Under the authority of federal law, CSAAVE operates as part of the government of the State of California to approve or disapprove veterans' education and training programs, prevent abuses, and promote quality in veterans' education by evaluating and monitoring education and training programs. Section 21.4253 of Title 38 of the Code of Federal Regulations.

In the present case, Mansour's de facto debarment claim is based on a single denial to participate in Title IV financial aid funding, and there is record evidence indicating that he has not been subject to debarment by other federal agencies. Therefore, the court finds that under the standard for de facto debarment articulated by the Ninth Circuit in *National Career College*, Mansour has not adequately stated a claim for de facto debarment that would entitle him to discovery.

### IV.  PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

On December 15, 2015, Plaintiffs filed a motion for leave to file a First Amended Complaint and to file supplemental briefing to address how the new allegations in the proposed First Amended Complaint are relevant to Plaintiffs' motion for discovery. Docket No. 42. Plaintiff did not provide notice of a hearing date and time, as required by Civil L.R. 7-2.

In light of this order, which likely impacts Plaintiffs' proposed amendments, Docket No. 42 is denied without prejudice. The parties shall meet and confer regarding Plaintiffs' First Amended Complaint. If the parties are unable to agree, Plaintiffs shall file a regularly noticed motion for leave to file an amended complaint within 30 days of this order.

Plaintiffs' request to file supplemental briefing related to the First Amended Complaint is denied.

### V.  CONCLUSION

In APA cases, the Department's certification of the Administrative Record is granted a presumption of regularity. For the most part, Plaintiffs failed to meet their burden of establishing by clear evidence that they are entitled to discovery. However, Defendant has put forth evidence indicating that it relied on extra-record material related to its consideration of Grimm's involvement with Elite in denying Plaintiffs' application. Therefore, Defendant is ordered to supplement the Administrative Record with the materials it considered regarding Grimm's involvement with Elite in denying Blush's application. Plaintiff is entitled to limited discovery, as outlined above, on this discrete issue. Mansour has not established his right to discovery on his de facto debarment claim.

For these reasons, Plaintiffs' motion for discovery is **granted in part and denied in part**.

13

Plaintiffs' request to file a first amended complaint is **denied without prejudice.**

Plaintiffs' request to file supplemental briefing is **denied.**

**IT IS SO ORDERED.**

Dated: January 29, 2016

_____
Donna M. Ryu
United States Magistrate Judge

14