BRIAN J. STRETCH (CABN 163973)
United States Attorney

SARA WINSLOW (DCBN 457643)
Chief, Civil Division

MELANIE L. PROCTOR (CSBN 228971)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    FAX: (415) 436-7169
    melanie.proctor@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| HESTIA EDUCATION GROUP, LLC dba BLUSH SCHOOL OF MAKEUP, et al.,<br><br>    Plaintiffs,<br>v.<br><br>JOHN KING, Secretary of the United States Department of Education,<br><br>    Defendant. | Case No. C 15-1463 DMR<br><br>DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION<br><br>Date:  December 22, 2016<br>Time:  11:00 am<br>Place:  The Honorable Donna M. Ryu<br>         Courtroom 4, 3rd Floor |

REPLY
C 15-1463 DMR

## I.     INTRODUCTION

Plaintiffs Hestia Education Group, LLC (dba Blush School of Makeup), and Manhal Mansour ("Plaintiffs") brought this action to challenge the Department of Education's ("Department") denial of their application to participate in federal student aid programs. Plaintiffs argue that the denial constituted a *de facto* debarment, and was arbitrary and capricious. Plaintiffs have opposed Defendant's motion for summary judgment.[1] Plaintiffs have not been debarred; in fact, they participate in other federal programs. In addition, the administrative record amply supports the Department's decision. Defendant's motion should be granted.

## II.     ANALYSIS

### A.     Plaintiffs Have Not Been Debarred

Plaintiffs argue that they have been *de facto* debarred by the Department's denial of certification to Blush. ECF 94, Plaintiffs' Opposition, pp. 7-11. Plaintiffs continue to ignore the Department's clear statement that the Department would reconsider its decision if a controlling interest in Blush were transferred to a person not related to Plaintiff Mansour. AR 220; *see* 34 C.F.R. § 180.130.  Plaintiffs also continue to ignore the court's finding that Blush is certified to participate in other federal programs. *Hestia Educ. Grp., LLC v. King*, 2016 WL 362226, at *7 (N.D. Cal. Jan. 29, 2016) ("Mansour cannot claim that he has been debarred, since the record clearly shows that he has not been barred from transactions with other federal agencies.").

The facts in this case are aligned with those in *Nat'l Career College, Inc.  v. Spellings*, 371 Fed. Appx. 794 (9th Cir. 2010). There, the plaintiff Allen Mirzaei ("Mirzaei") had previously been subject to

---

[1] Plaintiffs include with their opposition two declarations that are not part of the Administrative Record. ECF 94-1, 94-2; *see Camp v. Pitts*, 411 U.S. 138, 142 (1973). Regardless, the declarations do not contradict evidence that demonstrates Ms. Grimm's position as Elite's Director of Operations had an impact on at least three of the thirteen serious findings in the 2008 Elite Final Program Review Determination ("FPRD"). *See* AR 52-53 (finding Elite drew Title IV funds for students who were no longer enrolled), 55-56 (finding Elite failed to timely report student status), 62-63 (finding Elite failed to return Title IV funds when students withdrew); ECF 75-1, First Amended Complaint ("FAC"), Exh. 28, Director of Operation Job Description ("Give FA updated Withdraw and Graduate lists on the 20th."). Nor do the declarations contradict Ms. Wittman's belief and testimony that Ms. Grimm was involved in financial aid at Elite. As demonstrated by Plaintiffs' own evidence, it is entirely possible that Ms. Grimm was involved without overseeing the mechanics of students' financial aid applications. ECF 75-1, FAC, Exh. 28.

a debarment proceeding that settled, inclusive of terms that prohibited him from being an officer, director, or owner of a corporation participating in any of the Title IV HEA programs. *Nat'l Career College, Inc. v. Spellings*, 2008 WL 10906117, at *3 (D. Haw. Oct. 6, 2008). Four years after the term of the settlement agreement expired, Mirzaei acquired a 49% interest in a participating institution; five months later, he acquired the remaining 51%. *Id.* at *2. He then submitted a change of ownership application the Department. *Id.* The Department denied the application, finding Mirzaei's prior conduct prohibitive. *Id.* at *3. The Department followed its denial letter with an email explaining that, if the school submitted an application under a different ownership structure, it would review such an application, but it was "unlikely to approve any arrangement where [the plaintiff had] an ownership interest that [was] greater than 25 percent." *Id.* The plaintiffs sought reconsideration, and the Department affirmed its decision. *Id.* The district court found that the Department's attempt to limit Mirzaei's ownership interest in the school did not constitute a *de facto* debarment. *Nat'l Career College*, 2008 WL 10906117, at *7. The district court also found that because the Department would consider an application if Mirzaei decreased his ownership stake below 25%, the plaintiffs had not been prohibited from applying and participating in Department programs, or obtaining funds any other government agencies. *Id.* On these facts, the district court granted summary judgment in the Department's favor: "Plaintiffs were not de facto or de jury debarred by the United States Department of Education." *Id.*

    Here, as in *National Career College*, Plaintiff Mansour was previously involved in a school with significant administrative problems. AR 27-108. The issues were resolved through a settlement agreement. AR 109-112. Plaintiffs, like the plaintiffs in *National Career College*, complain that a single decision by the Department constitutes a *de facto* debarment. ECF 75, FAC, p. 28 ¶¶ 85-92; *Nat'l Career College*, 2008 WL 10906117, at *4. While Plaintiffs claim that Mirzaei was afforded a debarment hearing and Mansour was not, they ignore that the debarment proceeding was for Mirzaei's prior institution and was resolve through a settlement—similar to what happened with Elite. ECF 94, p. 8. Accordingly, it is not a distinguishing fact. While Plaintiffs argue the Department's rejection of their proposed "extensive safeguards" distinguishes this case from *National Career College*, none of those proposals would have reduced Mansour's ownership stake in Blush. AR 192-194. Here, as in *National Career College*, the Department has informed Plaintiffs that it would consider an application from Blush

under some other person's ownership. AR 220. Accordingly, the facts of *National Career College* are not "readily distinguishable." ECF 94, p. 8. Rather, the facts are parallel.

Plaintiffs also argue that the Ninth Circuit confused *de jure* debarment with *de facto* debarment.[2] ECF 94, p. 11. Even if Plaintiffs are correct, it is a distinction without a difference. Simply put, debarment is the exclusion of a person or entity from any federal contract. 2 C.F.R. §§ 180.125, 180.925, 3485.12; *see Myers & Myers, Inc. v. U.S. Postal Service*, 527 F.2d 1252, 1253 (2d Cir. 1975) ("A debarment is 'an exclusion from Government contracting . . . for a reasonable, specified period of time commensurate with the seriousness of the (grounds for sanction).'") (citation omitted). In *TLT Construction Corp. v. United States*, 50 Fed. Cl. 212 (Fed. Cl. Ct. 2001), the Court of Federal Claims stated that "[t]wo options exist to establish a de facto debarment claim: 1) by an agency's statement that it will not award the contractor future contracts; or 2) by an agency's conduct demonstrating that it will not award the contractor future contracts." *TLT Construction*, 50 Fed. Cl. at 215-16. The court rejected a *de facto* debarment claim, finding that a plaintiff who brought a bid protest action "offered no clear evidence that it was being disqualified from government contracts on a systemic basis." *Id.* at 216. The court also noted that the agency awarded the contractor two smaller contracts during the same time frame. *Id.*

No case supports a finding of debarment on facts such as these, where Plaintiffs challenge a one-time denial of an application for certification while holding other federal contracts. ECF 75, FAC, p. 20 ¶ 59. In contrast, there are cases that support Defendant's position. In *Community Economic Development Corp. v. United States*, 577 F. Supp. 425 (D.D.C. 1983), the General Services Administration ("GSA") issued a solicitation for offers for the lease of office and related space. *Id.* at 425. After learning that the Community Economic Development Corporation had failed to pay property taxes for the four years preceding its offer, the contracting officer determined that it was a nonresponsible offeror and rejected its offer. *Id.* The district court found the rejection had a reasonable basis, and found that this one-time disqualification did not constitute a de facto debarment without due

---

[2] Counsel for Plaintiffs pressed a similar argument without success in briefing *National Career College. See* Opening Brief, *National Career College Inc. v. Spellings*, 2009 WL 2609796, at Section III.

REPLY
C 15-1463 DMR                                               3

process. *Id.* at 428. Similarly, in *Commercial Envelope Mfg. v. Dunlop*, 1975 WL 191 (S.D.N.Y. June 26, 1975), the plaintiff argued that a determination by the GSA that it was a nonresponsible contractor without a formal hearing violated its due process rights. *Id.* at *2.  The district court found that "[a] debarment is a total bar to receipt of a contract for a period of time, not a single finding of nonresponsibility." *Id.* at *3. The district court noted that "a single determination of nonresponsibility does not result in a *de facto* debarment because its effect does not extend beyond the contract with respect to which the nonresponsibility was found." *Id.* Here, too, Plaintiffs protest a single finding that Blush, under Mansour's majority ownership, cannot act as a fiduciary. Plaintiffs have been informed that the Department will consider an application by Blush under another person's ownership. AR 220. Moreover, Plaintiffs are engaged in other federal contracts. ECF 45, pp. 11-12. Accordingly, they cannot establish debarment under any theory.

**B.     The Department's Decision Has Been Consistent**

Plaintiffs argue that the Department's reasoning for denying Plaintiffs' application has shifted throughout the administrative process and subsequent litigation. ECF 94, pp. 14-16. To the contrary: From the February 12, 2014 initial denial (AR 1-4) to the February 20, 2015 final reaffirmation (AR 214-220), the Department has consistently informed Plaintiffs that the omission of Elite from the Blush application was significant because of Elite's history with the Department. AR 2-3, 176-179, 214-216. The decision maker has also consistently attested and testified that when reaching her decision, she considered Elite's entire history. ECF 32-2, Declaration of Martina Fernandez-Rosario ("Fernandez-Rosario Decl."), p. 3 ¶ 9; ECF 86-2, Declaration of Melanie Proctor ("Proctor Decl.")., Exhibit B, Deposition of Martina Fernandez-Rosario ("Fernandez-Rosario Depo."), 34:18-21, 46:13-22, 76:22-77:14, 85:20-86:1, 91:1-8, 92:3-4.

Plaintiffs apparently protest the fact the Department responded to their shifting explanations for Elite's mismanagement of Title IV funds and rebutted their various arguments against a denial. ECF 94, pp. 1-4, 14-16. The Department's responses to Plaintiffs' arguments were not a change of its rationale, but rather, responses to Plaintiffs' letters and emails. AR 2-3, 176-179, 214-216.  It is unclear exactly what Plaintiffs expected the Department to do, because had the Department not responded to their explanations and arguments, Plaintiffs would undoubtedly argue the Department failed to consider all

relevant factors when reaching its decision. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Department's thorough responses to Plaintiffs—in the administrative process and in this litigation—do not constitute "post-hoc" rationalization. *Chae v. SLM Corp.*, 593 F.3d 936, 949 (9th Cir. 2010); *see Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974) (holding Court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."); *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1233 n.11 (D.C. Cir. 1994) (rejecting plaintiffs' argument that position taken by agency in litigation was a post-hoc rationalization, even though agency "could have placed a finer point" on the issue in its explanation in the record).

Notably, Mansour's explanation for the unlawful disbursement has shifted over time:

1. During the 2007 program review, which occurred onsite at Elite from August 27 through August 31, 2007, Mansour assured the Department that Elite had not disbursed funds to students attending the Stockton campus; however, by the third day of the onsite review, he admitted that he could not determine whether Stockton students had received Title IV funds.[3] AR 32.

2. On June 9, 2008, Elite, through counsel, asserted that "[p]ast audits have established that Elite's internal controls failed to properly control student transfers between campuses and maintain accurate record keeping." AR 451.

3. On July 22, 2008, in response to the denial of certification for the Stockton and Concord campuses, Mansour (through counsel) asserted that "[t]he withholding of eligibility for hundreds of students in two perfectly eligible campuses based on what could turn out to be false claims by a disgruntled student or two or lapses in administrative capability that have long been remedied seems unsupportable." AR 456.

4. On March 21, 2014, Plaintiffs asserted that Elite's position on the unlawful disbursement of Title IV funds to students attending the Stockton campus was "that it enrolled these students at its

---

[3] Plaintiffs do not contest the findings in the 2008 Elite FPRD. ECF 81, Plaintiffs' Reply in Support of Motion for Extension of Summary Judgment Briefing Schedule, p. 3; ECF 75, FAC, ¶¶ 27-29, 36. The program review report specifically mentioned Mansour's initial denial that Stockton students received Title IV funds, and Mansour did not contest that statement in his response to the program review. AR 32.

REPLY
C 15-1463 DMR                                           5

      eligible main campus and that it was appropriate for Elite to provide a portion of their instruction at an ineligible branch campus." AR 120.

5. On August 23, 2016, Plaintiffs alleged that when Mansour learned of the unlawful disbursements, he "replaced the financial aid staff who unfortunately mistakenly concluded that Title IV could be disbursed to students enrolled at Elite's Stockton campus on the basis that the campus was located within 50 miles of Elite's main campus in Sacramento." ECF 75, FAC, p. 10 ¶ 28.

6. On October 6, 2016, Mansour declared that he was aware of the unlawful disbursements as early as May 2006, and that he instructed Elite to stop disbursing Title IV funds to Stockton students. ECF 87-9, Declaration of Manhal Mansour, pp. 3-4 ¶¶ 13, 14.

Mansour's October 6, 2016 declaration is contradicted by the 2008 Elite FPRD, which found Title IV disbursements to 89 students in the 2006-2007 award year.[4] AR 91-93. Thus, it is not the Department that has been inconsistent in its explanations.

Elite's auditor, Barry Glasser, did not include his alleged discovery of the unlawful disbursements in any of his audit reports, in contravention of the Department's audit standards. AR 235-352; ECF 90, 91; *see* U.S. Department of Education Audit Guide, dated January 2000, p. I-15 (requiring "all instances of noncompliance" to be reported as a finding), available at

---

[4] Notably, on October 16, 2006, the Department placed Elite on the Heightened Cash Monitoring 2 ("HCM2") method of payment. AR 471. Under this payment method, an institution makes disbursements to students from its own funds, and then requests reimbursement from the Department. 34 C.F.R. § 668.162(d) (2006). The institution must submit specific documentation to the Department before Title IV funds will be disbursed. *In the Matter of Int'l Junior College*, U.S. Dep't of Educ., Dkt. No. 07-52-SA, available at 2010 WL 6487002, at *3 (Nov. 19, 2010). In contrast, under the advance payment method, an institution submits a request to the Department for funds, not to exceed the amount needed immediately for disbursements the institution will make to eligible students and parents. 34 C.F.R. 668.162(b)(1) (2006). In 2006, requested funds were available at the latest two days after submission of the payment request. *See* http://www2.ed.gov/about/offices/list/ocfo/faq.html#drawdown, Question 8 (last visited Nov. 3, 2016). For the convenience of the Court, a copy of this webpage is being provided as Appendix 1 to this brief. The institution must disburse the funds requested as soon as administratively feasible but no later than three business days following the date the institution received those funds. 34 C.F.R. § 168.162(b)(3) (2006). Under this payment process, an institution accounts for the proper use of funds through compliance audits and on-site reviews conducted by the Department. *Int'l Junior College*, 2010 WL 6487002, at *3 n.11.

1  http://www2.ed.gov/about/offices/list/oig/nonfed/sfgd2000.pdf (last visited Oct. 26, 2006).[5] Further,
2  Elite, through Mansour, failed to self-report the discovery. To participate in Title IV, HEA programs, an
3  institution must demonstrate that it is capable of administering the program. 34 C.F.R. § 668.16 (2006).
4  Participating institutions must refer to the Office of Inspector General

> [a]ny credible information indicating that any employee, third-party servicer, or other agent of the institution that acts in a capacity that involves the administration of the Title IV, HEA programs, or the receipt of funds under those programs, may have engaged in fraud, misrepresentation, conversion or breach of fiduciary responsibility, or other illegal conduct involving the Title IV, HEA programs. The type of information that an institution must refer is that which is relevant to the eligibility and funding of the institution and its students through the Title IV, HEA programs.

34 C.F.R. § 668.16(g) (2006). Mansour now admits that he knew about the unlawful disbursements as early as May 2006; however, he did not refer the matter to the OIG. ECF 87-9, Mansour Decl., pp. 3-4 ¶¶ 13, 14. Instead, when program reviewers initiated the 2007 program review of Elite, Mansour "assured the reviewers that Elite had not disbursed Title IV funds to students enrolled at the Stockton location." AR 32.

Finally, Plaintiffs incorrectly assert that the Department has admitted the omission of Elite from the Blush application was "insignificant." ECF 94, p. 16. While Plaintiffs selectively quote the Fernandez-Rosario Declaration, she actually declared that "When I first reviewed the application, I was initially willing to overlook the omission in Mr. Mansour's application about his ownership of a prior Title IV eligible institution—Elite. A review of the history of Elite, Plaintiff Mansour, and his wife's complicity in the Elite scheme overwhelmed that initial inclination." ECF 32-2, Fernandez-Rosario Decl., p. 3 ¶ 9. Thus, the omission of Elite was significant in light of Elite's entire history of Title IV mismanagement and other administrative issues. *Id.*

The Administrative Record, the pleadings on file, and the law amply support the Department's decision. Defendant's motion for summary judgment should be granted.

---

[5] Defendant respectfully requests the Court to take judicial notice of this official document. Fed. R. Evid. 201; *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014); *Owino v. Holder*, 771 F.3d 527, 534 n.4 (9th Cir. 2014). For the convenience of the Court, the relevant excerpt of this guide is attached as Appendix 2 to this brief.

## C. Plaintiffs' Remaining Arguments Are Without Merit

Plaintiffs contend that only the institution, and not the owner, must be a fiduciary. ECF 94, pp. 17-18. This argument is specious. It is clear that the people managing the institution must be capable of fulfilling their fiduciary duties. In *Nat'l Career Coll. v. Spellings*, 371 Fed. App'x 794 (9th Cir. 2010), the panel noted that "When deciding whether to grant an application to participate in Title IV programs, the [Department] is charged with making sure the college and the people managing that college will fulfill their fiduciary duties in handling many thousands of dollars of the public's money." *Id.* at 796. Similarly, the Department's Office of Hearings and Appeals has found that that the ultimate responsibility for ensuring that Title IV requirements are met lies with the school's owner. *In the Matter of Art of Beauty College*, U.S. Dep't of Educ., Dkt. 94-151-ST (Mar. 28, 1995), pp. 2-3, available at http://oha.ed.gov/cases/1994-151st.html (last visited Oct. 28, 2016).

Plaintiffs argue again that the agency process was tainted by bias. But as the Court has noted, Plaintiffs are focused on the actions of a person who was not the decision-maker. ECF 89, p. 1. The decision-maker has repeatedly declared and testified that she reached her decision based on the entirety of Elite's history with the Department. ECF 32-2, Fernandez-Rosario Decl., p. 3 ¶ 9; ECF 86-2, Proctor Decl., Exhibit B, Deposition of Martina Fernandez-Rosario ("Fernandez-Rosario Depo."), 34:18-21, 46:13-22, 76:22-77:14, 85:20-86:1, 91:1-8, 92:3-4. Plaintiffs' claim of bias is without basis.

## III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court to grant Defendant's Motion for Summary Judgment.

DATED: November 3, 2016

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

/s/Melanie L. Proctor
MELANIE L. PROCTOR
Assistant United States Attorney
Attorneys for Defendant